# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

BRIDGET CHERRY,        )
       Plaintiff,        )
       )
v.        )      CAUSE NO.: 2:16-CV-425-PRC
       )
NANCY A. BERRYHILL,        )
Acting Commissioner of the        )
Social Security Administration,        )
       Defendant.        )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Bridget Cherry[1] on

October 5, 2016, and a Brief in Support of Plaintiff's Motion for Summary Judgment [DE 17], filed

by Plaintiff on February 27, 2017. Plaintiff requests that the May 21, 2015 decision of the

Administrative Law Judge denying her claim for disability insurance benefits and supplemental

security income be reversed and remanded for an award of benefits or for further proceedings. On

June 5, 2017, the Commissioner filed a response, and Plaintiff filed a reply on June 29, 2017. For

the following reasons, the Court denies Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

In April 2012, Plaintiff filed applications for disability insurance benefits and supplemental

security income, alleging disability since February 2011. The application was denied initially and

on reconsideration. In March 2015, Administrative Law Judge John Kraybill ("ALJ") held a hearing

by video conference. In attendance at the hearing were Plaintiff, Plaintiff's attorney Pamela Tucker,

an impartial vocational expert, and James M. McKenna, M.D., an impartial medical expert. On May

21, 2015, the ALJ issued a written decision denying benefits, making the following findings:

---

[1] Plaintiff Bridget Cherry is not related to the undersigned.

1.      The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2.      The claimant has not engaged in substantial gainful activity since February 19, 2011, the alleged onset date.

3.      The claimant has the severe impairments of morbid obesity, a vertebrogenic disorder, and a history of cancer of the left breast with no evidence of metastatic disease.

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to frequent (not continuous) manipulation with her nondominant left upper extremity, and no more than occasional overhead use. She has no limitations in her dominant right upper extremity. She can never climb ladders, ropes, and scaffolds, ramps, and stairs. She can no more than occasionally (15% to 20% of the workday) balance, stoop, kneel, crouch, and crawl. She must avoid unprotected heights and concentrated exposure to temperature extremes and to respiratory irritants. She must avoid exposure to unpredictable moving machinery and hazards.

6.      The claimant is capable of performing past relevant work as a telephone solicitor and customer service clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.      The claimant has not been under a disability, as defined in the Social Security Act, from February 19, 2011, through the date of this decision.

(AR 23-27).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision

"without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant

numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks remand, arguing that the ALJ erred (1) in assessing her subjective complaints; (2) because the residual functional capacity assessment was not supported by substantial evidence; and (3) because the ALJ found Plaintiff could do her past relevant work but did not perform the required analysis of the physical and mental demands of the work. The Court considers each argument in turn.

### A. Subjective Complaints

As an initial matter, the parties dispute whether Social Security Ruling 96-7p or Social Security Ruling 16-3p governs this case. In October 2017, after the briefing on the instant appeal was complete, the Social Security Administration clarified that Social Security Ruling 16-3p only applies when the ALJs "make determinations and decisions on or after March 28, 2016" and that Social Security Ruling 96-7p governs cases decided before that date. *See* Notices, Social Security Ruling 16-3p, 2017 WL 4790249 (Oct. 25, 2017). The ALJ issued his decision on May 21, 2015; therefore, Social Security Ruling 96-7p governs.

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a); 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id.* The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)     The individual's daily activities;
(2)     Location, duration, frequency, and intensity of pain or other symptoms;
(3)     Precipitating and aggravating factors;
(4)     Type, dosage, effectiveness, and side effects of any medication;
(5)     Treatment, other than medication, for relief of pain or other symptoms;
(6)     Other measures taken to relieve pain or other symptoms;

6

(7)     Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). "An ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."). A credibility determination will be overturned only if it is patently wrong. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

First, Plaintiff asserts that the ALJ's finding that her subjective complaints were "not entirely credible," (AR 26), amounts to "meaningless boilerplate," citing *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). (ECF 17, p. 9). Indeed, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms *are not entirely credible for the reasons stated in this decision.*" (AR 26) (emphasis added). Although this language itself is not meaningful, it is simply an introduction to the ALJ's fact-based analysis of several factors, which this Court discusses below. *See* (AR 26). This is precisely the type of analysis the Seventh Circuit Court of Appeals requires. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012). This is not a case in which the "boilerplate" statement is the sole basis of the ALJ's assessment of Plaintiff's subjective statements. Remand is not required because of the use of this introductory phrase.

In assessing the credibility factors, the ALJ first found that Plaintiff stopped working in 2009 when her employer closed and that she did not stop working because of impairment-related

symptoms or functional limitations. (AR 26). Plaintiff argues that this finding ignores Plaintiff's testimony that at the time her back pain interfered with her ability to work and was a "contributing factor." (ECF 17, p. 9) (citing (AR 38)). This is a misrepresentation by Plaintiff of the hearing testimony; the testimony about her back refers to her *current* alleged inability to work since 2011 and not about her ability to work in 2009 when she stopped working:

> Q    And have you worked since 2011?
> A    No, sir.
> Q    The record actually looks like you stopped working back in 2009.
> A    Yes, sir. At that time, when the – the stock market crashed, – I think that was the event – my company closed, and I was unemployed.
> Q    Okay. And can you describe what you feel are the main reasons *why you're not able to work*, the main problems you're having?
> A    The pain in my back, unsteady walking. Recently, I was diagnose[d] with breast cancer and had lymph nodes removed. And I have swelling in my left arm, pain; numbness in my hands and feet. So it's just a little difficult, doing normal tasks.

(AR 38) (emphasis added). Moreover, under the "Work Activity" section of her Disability Report - Adult - Form SSA 3368, Plaintiff indicated that she stopped working on 02/28/2009 "[b]ecause of other reasons," which was that she "was layed off." (AR 212). The ALJ's finding and reliance on this factor was appropriate. Elsewhere in the decision, the ALJ acknowledges Plaintiff's current claim of disabling back pain.

However, the Court agrees with Plaintiff that the ALJ's second finding that Plaintiff has "had no actual treatment for her back impairment," (AR 26), is not supported by substantial evidence. The ALJ implies that Plaintiff never pursued physical therapy for her back pain by noting that Plaintiff's treating physician advised her to have physical therapy in 2012, that Plaintiff obtained Medicaid during the fall of 2012, that Plaintiff's treating physician attributed her lack of treatment for her back impairment to her treatment for breast cancer, but that Plaintiff was not diagnosed with breast cancer

until February 2014, which was a year and a half after "she obtained access to medical care through Medicaid." (AR 26). The ALJ also notes that she never underwent the EMG/NCV study. *Id.*

Both statements are incorrect. First, the treatment records cited by Plaintiff show that, once she obtained Medicaid, Plaintiff participated in the physical therapy originally prescribed by her treating physician, Dr. Desai, in October 2012; her treating nurse practitioner, affiliated with Dr. Desai, noted in the December 2012 treatment records that Plaintiff reported some relief from the physical therapy but that the relief was short lived. *See* (AR 293-94, 299, 300, 395, 421, 422). The ALJ does not acknowledge these records. In addition, in the same records, Plaintiff reports that she was doing a prescribed home exercise plan (HEP), but that it was not helping as much as she had hoped. *See* (AR 421, 422). The ALJ is correct that, almost two years later, in August 2014, Dr. Desai recognized that, at that time, *after* her cancer diagnosis, Plaintiff had been prioritizing her breast cancer treatment over alleviating her back pain. (AR 395). And, at that time, Dr. Desai recommended a new round of physical therapy. *Id.* Thus, the ALJ is incorrect that Plaintiff did not pursue physical therapy for her back pain in 2012 once she obtained Medicaid and before her cancer diagnosis in 2014. Also, the ALJ states that Plaintiff never underwent the EMG/NCV study; however, in Dr. Desai's August 28, 2014 treatment record, there is a notation requesting the results of the EMG and NCV done at Methodist Hospital in 2013. (AR 395).

The ALJ also does not address the consistent treatment for back pain by medication. As cited by Plaintiff, the treatment notes show that, beginning in April 2011 through January 2015, Plaintiff routinely complained of back pain to her treating physicians and was routinely prescribed medications for her the pain. *See* (AR 258-66, 293-94, 296, 299-303, 306, 308-09, 390-96, 398-401, 403, 405, 408-11, 414-15, 417-22). The ALJ does not discuss her treatment with medication. Thus,

the ALJ's statement that Plaintiff did not receive treatment of her back pain was not supported by substantial evidence. However, in light of the ALJ's entire credibility determination and analysis of the evidence, this error does not require remand because the credibility determination overall is supported by substantial evidence.

Importantly, the ALJ went on to acknowledge that Plaintiff "does have some functional limitations" based on the consultative examination on August 14, 2012, which postdates the onset of Plaintiff's back pain. (AR 26). The ALJ noted the consultative examiner's finding of tenderness to palpation in the lumbar spine, restricted range of motion, and positive straight leg raises bilaterally. As for the upper extremities, the ALJ correctly noted that Plaintiff had no stiffness, edema, or atrophy, that she had full range of motion, and that strength was 5/5 in all major muscle groups. *Id*. As for the lower extremities, the ALJ correctly noted that she had full range of motion and 5/5 strength with normal sensation to light touch and pin prick. The ALJ then recognized that the consultative examiner noted that Plaintiff has an unsteady gait and walked with a cane, that she was unable to stoop, squat, or walk heel to toe with a tandem gait and that she got on and off the examination table with difficulty. *Id*. The ALJ noted the finding that Plaintiff's deep tendon reflexes were 2+ and symmetric and that she had no muscle atrophy, grip strength of 5/5 bilaterally (arguments regarding this finding are below in the RFC analysis), and good fine finger manipulative abilities including the ability button, zip, and pick up coins. *Id*. The ALJ then found that these recognized limitations exhibited at the 2012 consultative examination are consistent with sedentary work. Moreover, the ALJ further credited Plaintiff's additional limitations to her left upper extremity resulting from her breast cancer surgery that occurred after the consultative examination and included additional relevant limitations in the RFC.

Plaintiff argues that the ALJ made no clear findings related to her subjective complaints, arguing that her activities were severely limited by obesity and pain in her back and extremities, resulting in her need for a cane to ambulate, her inability to stand or sit for longer than 15-20 minutes at a time, and difficulty using her left arm and both hands. Plaintiff argues that the ALJ failed to consider these complaints and the evidence relating to them. However, in making this argument, Plaintiff cites generally her summary of the medical evidence at pages 2-3 of her brief. A review of this evidence indeed shows her consistent complaints of pain from 2011 through 2014. Plaintiff does not argue how any of that evidence changes the credibility determination or would change the RFC. The ALJ noted the mild objective findings from the x-rays in September 2011, April 2013, and December 2013, as well as the December 2013 MRI. (AR 24). The ALJ also considered Plaintiff's history of complaining of worsening low back pain with radiation to all four extremities, with numbness and tingling in her hands and feet, which was diagnosed as lumbago (AR 23), the combination of her obesity and other impairments (AR 24, ), her cane use (AR 26), her inability to *stand* for longer periods of time (AR 26), and the limitations to her left arm and both hands (24, 26). All these limitations were acknowledged and credited by the ALJ and then incorporated into the RFC determination.

Finally, Plaintiff argues that the ALJ did not perform the required analysis in assessing Plaintiff's allegations of constant pain. Plaintiff argues that, even though there was no objective evidence of her pain, the ALJ should have elicited a detailed description of her activities to determine how pain affects them and to analyze treating physician observations and Plaintiff's reports of the nature and intensity of her pain, aggravating and relieving factors, pain control treatments, functional limitations, and activities of daily living. However, during the hearing, the

ALJ questioned Plaintiff about her cane use, the compression sleeve she wears on her arm, the basis for her inability to work (which she testified was pain in her back, unsteady walking, swelling and pain in her left arm, and numbness in her hands and feet), her sleeping habits, her pain medication (she testified she takes Norco in the morning every day), her inability to drive (due to pain), and her daily activities. As noted above, although the ALJ should have discussed Plaintiff's pain medication, the failure to do so in light of the evidence of record and the ALJ's analysis overall does not require remand. Plaintiff notes that she routinely reported her pain to her providers who prescribed medications, tests, and treatments, including electromyogram/nerve conduction velocity (EMG/NCV) study, lab tests, physical therapy, and consultations with specialists, citing in a string cite administrative record pages 279, 293, 300, 302, 306, 311-12, 335-38, 358-80, 404-05, 411, 413, 416, 418, 420-22. Again, however, this history was recognized and considered by the ALJ. Plaintiff has not identified any specific record that changes the credibility finding or the RFC.

In addition, the ALJ considered the opinion evidence, noting that the state agency medical consultants opined that Plaintiff could perform a range of light work but that, given the evidence of her left arm impairment since her breast cancer treatment occurred after their opinions and in light of the medical expert's opinion imposing greater limitations based on the entire record, the ALJ gave their opinions reduced weight, limiting Plaintiff to a reduced range of sedentary work. Plaintiff does not object to the weight given to this opinion evidence.

Next, the ALJ considered the opinion of Plaintiff's treating physician, noting that Dr. Desai found Plaintiff incapable of performing *light* work and that Dr. Desai opined that Plaintiff was unable to work because she was unable to stand, bend, or lift heavy objects. (AR 26). The ALJ is correct that the disability determination of whether a claimant can "work" is reserved to the

Commissioner. Nevertheless, the ALJ found Dr. Desai's comments regarding Plaintiff's functional limitations "generally consistent with my residual functional capacity." (AR 26). Plaintiff does not argue that the ALJ improperly relied on the opinion of her treating physician or that her treating physician suggested any specific functional limitations greater than those imposed by the ALJ.

Finally, the ALJ correctly relied on the opinion of Dr. McKenna, the medical expert who testified at the hearing and who opined that Plaintiff retained the range of sedentary work adopted by the ALJ in the RFC. The ALJ noted the detailed explanation with references to the record given by Dr. McKenna. The ALJ gave Dr. McKenna's opinion substantial weight, which is not disputed by Plaintiff. Unlike in *Stage v. Colvin*, in which the ALJ continued to rely on an outdated assessment, the ALJ in this case correctly relied on the assessments in combination with subsequent evidence as well as the expert opinion. 812 F.3d 1121, 1125 (7th Cir. 2016) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." (quoting *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014))).

It is not this Court's job to reweigh the evidence to determine if the Court would *de novo* award benefits. Rather, the Court must determine whether the ALJ's determination is supported by substantial evidence and not contrary to law. The Court finds that the ALJ did not err in the credibility determination.

### B. Residual Functional Capacity

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The

RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence because he made several errors in evaluating the evidence of record. The Court considers each of Plaintiff's arguments in turn.

1.    *Grip Strength*

In the RFC, the ALJ limited Plaintiff to frequent (but not continuous) use of the nondominant left upper extremity with no more than occasional overhead use and no limitations in her dominant right upper extremity. (AR 25). The vocational expert testified that an individual who

was limited to frequent (but not continuous) manipulations with the left upper extremity would be able to perform Plaintiff's past relevant work. (AR 64, 65). The vocational expert then testified that, if the individual's left arm use was limited to occasional for "writing, for doing any type of typing, moving papers, that type of thing," the individual would not be capable of performing Plaintiff's past work. (AR 65). Thus, based on the vocational expert's opinion, the ALJ found that Plaintiff could perform her past relevant work. (AR 25).

In this appeal, Plaintiff argues that, although the ALJ found the 2012 consultative examination by Dr. Smejkal generally consistent with the RFC, the examination showed that Plaintiff had significantly limited grip strength based on reported dynamometer measurements. *See* (ECF 280-81). In his report, Dr. Smejkal noted that Plaintiff complained of numbness and tingling in her hands and feet and that she "showed during the exam her trying to dial her phone with her thumb and it began to have tremors and she could not dial the right numbers." (AR 279). In his review of systems, Dr. Smejkal's findings for Plaintiff's "upper extremities" provided:

> No anatomical deformities noted. There is no stiffness, effusion, amputation, atrophy, ulcers or edema in upper extremities. No skin discoloration or poor circulation noted. There is no increased skin warmth involving the shoulders, elbows, wrist, and hands. There is full range of motion in all upper extremity. Strength is 5/5 in all upper major muscle groups. Patient has no erythema, warmth, or swelling bilaterally in the hands, there are no heberden nodes. Dynamometer testing using the right hand claimant is able to generate 14 kilograms of force, and using the left hand, claimant is able to generate 10 kilograms of force.

(AR 281). Under "Neurological," Dr. Smejkal found "normal biceps, triceps," "no muscle atrophy noted," "[n]ormal grip strength at 5/5 bilaterally with good fine finger manipulative abilities, including the ability to button, zip, and pick up coins," "[c]oordination is normal," and "[f]inger to nose is normal." (AR 282).

In his decision, the ALJ relied on this report, accurately noting that "in the upper extremities, she had no stiffness, edema, atrophy, she had full range of motion, and strength was 5/5 in all major muscle groups." (AR 26). The ALJ further accurately noted that "grip strength was 5/5 bilaterally with good fine finger manipulative abilities including the ability to button, zip, and pick up coins. Her coordination and ability to perform finger to nose maneuver were normal." *Id.* The ALJ nevertheless accommodated left upper extremity limitations resulting from Plaintiff's breast cancer surgery that limited her range of motion in lifting her arm overhead. *Id.*

In the factual background of her brief, Plaintiff cites the dynamometer testing of her hands that showed she had generated 14 kilograms of force with her right hand and 10 kilograms of force with her left hand. Then, in a footnote, she notes that the normal measures for a 50-year-old woman are 28 kilograms for the right hand and 26 kilograms for the left hand. (ECF 17, p. 4). Then, in her analysis, based on these numbers, Plaintiff concludes that she had significantly limited grip strength, with approximately 50% of normal grip strength for women of her age group on the right dominant hand and 40% of normal grip strength on the left. Plaintiff also notes that the examination found significant difficulty dialing a smart phone due to hand tremors. (AR 279). Plaintiff criticizes the ALJ for not discussing this evidence, which is consistent with her subjective complaints, and for not explaining how Plaintiff could perform frequent manipulative activities with her hands so impaired. Plaintiff argues that this is not harmless because SSR 85-15 provides that "[s]ignificant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a [vocational specialist] may be needed to determine the effects of the limitations." SSR 85-15, 1985 WL 56857, at *7.

In *Herrmann v. Colvin*, the court noted that the grip strength of 31 pounds for the right hand and 11 pounds for the left hand were "well below the normal range for women of the applicant's age." 772 F.3d 1110, 1112 (7th Cir. 2014). And, the court noted that the treating physician who reported those findings *also* found that the plaintiff would have trouble "handling," which is consistent with reduced grip strength. *Id*. Nevertheless, the ALJ held that the doctor had found that "manipulative abilities were normal." *Id*. at 1111. The court remanded on this issue, finding that the ALJ's conclusion regarding the meaning of the doctor's report was not supported by the evidence.

*Herrmann* is distinguishable because the same doctor who reported low dynamometer results *also* found decreased hand strength, whereas Dr. Smejkal reported low dynamometer results but nevertheless found grip strength of 5/5 bilaterally notwithstanding the dynamometer measurements. *See, e.g.*, *Bush v. Astrue*, No. 4:10-CV-13, 2010 WL 5252177, at *2 (S.D. Ind. Dec. 16, 2010) (noting that the plaintiff's doctor had noted that the plaintiff's grip strength was markedly higher than that seen by dynamometer measurements and was subjectively normal). The ALJ appropriately relied on Dr. Smejkal's report that Plaintiff had 5/5 grip strength in both hands and good finger manipulation ability, including the ability to button, zip, and pick up coins. (AR 26, 282). Notably, Plaintiff incorrectly represents in her recitation of the medical facts that Dr. Smejkal observed "bilateral hand swelling," (ECF 17, p. 4), as Dr. Smejkal reported finding "no erythema, warmth, or swelling bilaterally in the hands," (AR 291).

In addition, the ALJ noted that, although Plaintiff's treating physician, Dr. Desai, opined that Plaintiff could not work, the only specific functional limitations Dr. Desai identified were the inability to stand, bend, or lift heavy objets. (AR 26, 294). Dr. Desai did not identify any manipulative limitations. (AR 294). The ALJ also relied on the opinion of the testifying medical

expert, Dr. McKenna, who opined that Plaintiff should be limited to frequent use of her left hand and only occasional overhead reaching on her left side; Dr. McKenna did not impose any other manipulative limitations based on the full medical record and Plaintiff's subjective complaints. *See* (AR 27, 59, 60, 61-63).

And, the ALJ noted that he also considered the reports of the state agency physicians, Dr. Ruiz and Dr. Eskonen, both of whom did not impose any manipulative limitations. (AR 288, 315). The Court recognizes that the ALJ gave these opinions reduced weight because new evidence had been received since their opinions were formulated, causing the ALJ to reduce the RFC from their proposal of light work to sedentary work. However, Dr. Smejkal's examination took place on August 14, 2012, and Dr. Ruiz's August 17, 2012 opinion specifically represents that he considered Dr. Smejkal's report. (AR 286). Dr. Eskonen affirmed Dr. Ruiz's opinion. (AR 315).

Thus, the Court finds that the ALJ did not err in limiting Plaintiff to frequent but not constant manipulation with her nondominant left upper extremity and no limitations in her dominant right upper extremity and that substantial evidence supports this portion of the RFC determination.

2.      *Stooping/Squatting*

Next, Plaintiff argues that, per the consultative examination, Plaintiff could not stoop or squat at all, (AR 281), yet the ALJ found that Plaintiff could stoop and squat occasionally. (ECF 17, p. 13) (citing (AR 25)). The ALJ found that Plaintiff could occasionally balance, stoop, kneel, crouch, and crawl. (AR 25). Plaintiff again argues that the ALJ did not discuss Plaintiff's treatment for back pain and the prescription medications, but Plaintiff fails to recognize that the limitations imposed by the ALJ are based directly on the testifying medical expert's opinion that Plaintiff could balance, stoop, crouch, and kneel occasionally. The medical expert had reviewed the medical

evidence of record as well as Plaintiff's testimony. Importantly, although the consultative examiner's finding of 45 degree lumbar flexion appears inconsistent with occasional stooping, *see Golembiewski*, 322 F.3d at 917; *Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013); *Hughes v. Colvin*, 2015 WL 2259833, at *16 (N.D. Ill. May 12, 2015), neither of Plaintiff's past jobs require stooping or squatting. Plaintiff herself indicated that neither job required stooping or squatting. *See* (AR 219, 220, 221, 222, 223). And, the DOT for both jobs indicates that stooping and squatting are not required. DOT 299.357-014, 1991 WL 672624 (telephone solicitor); DOT 249.262-101, 1991 WL 672314 (information clerk). Thus, even if a finding of occasional stooping was an error, it was harmless, and remand is not required.

*3.    Overhead Reaching*

With regard to overhead reaching, Plaintiff argues that the ALJ failed to explain how Plaintiff can occasionally perform overhead work when her limited left shoulder mobility made overhead reaching impossible. Plaintiff could not fully extend her left arm overhead, with a 2014 assessment showing her flexion limited to 105 degrees active range of motion and her abduction limited to 100 degrees active range of motion. (AR 58, 360). Plaintiff argues that the ALJ did not explain how someone who could never fully reach overhead could do so on an occasional (up to one-third of the work day) basis. However, like with stooping and squatting, Plaintiff's past work did not require overhead reaching. *See* (AR 219, 220, 221, 222, 223). The DOT indicates that the positions require reaching, but does not state overhead reaching. Therefore, any error in the limitation to occasional overhead reaching with the left upper extremity was harmless.

4.      *Obesity and Lumbar Spine Arthritis*

Next, Plaintiff argues that the ALJ did not explain why the combination of her obesity and her lumbar spine arthritis would not limit her ability to sit when it limited her ability to stand and walk. Plaintiff argues that the ALJ failed to consider her impairments in combination. 20 C.F.R. § 416.923; SSR 96-8p, 1996 WL 374184, *5. However, the ALJ specifically considered the impact of her obesity on her musculoskeletal problems. *See* (AR 24). Plaintiff notes that the ALJ credited the medical expert's testimony that the combination of obesity and "marked facet arthritis" at L4-5 was "severe" and would cause Plaintiff pain with standing and walking, limiting her to sedentary work. (AR 27, 51). Plaintiff then criticizes the ALJ for not explaining how Plaintiff could reasonably be expected to sit for six hours a day in light of her obesity and lumbar spine arthritis. SR 02-1p, 2002 WL 34686281, at *3-4; *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("Under SSR 02-1p, the ALJ must specifically address the effect of obesity on a claimant's limitations because, for example, a person who is obese and arthritic may experience greater limitations than a person who is only arthritic."); *Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014) ( obesity "might make it difficult for her to sit for long periods of time, as sedentary work normally requires"); *Liggins v. Colvin*, 593 F. App'x 564, 568069 (7th Cir. 2015).

Plaintiff notes that she alleged that she could only sit or stand for 15-20 minutes, (AR 46), that Plaintiff was observed to be uncomfortable while sitting at the consultative examination, (AR 280), and that, at the hearing before the ALJ, Plaintiff asked to stand, which the ALJ allowed, (AR 37). Notably, the testifying medical expert did not conclude from this evidence that Plaintiff would have trouble with sitting. (AR 51). No physician opined that Plaintiff could not sit, nor does Plaintiff cite any evidence in which she complained to her medical providers that she was unable to sit. In

addition to the medical expert's opinion that did not limit Plaintiff's ability to sit, the non-reviewing State agency physicians, Dr. Ruiz and Dr. Eskonen, opined that Plaintiff could sit for six hours with normal breaks. (AR 27). And, Plaintiff's treating physician, Dr. Desai, did not suggest that Plaintiff's ability to sit was limited; he imposed work-related limitations of no standing, bending, or lifting of heavy objects. (AR 26, 294). The substantial evidence of record supports the ALJ's RFC for sedentary work.

5.      *Cane*

Finally, Plaintiff criticizes the ALJ for not including a provision in the RFC regarding Plaintiff's cane use and for not questioning the vocational expert regarding whether past relevant work would be possible with the use of a cane. Plaintiff notes that she testified that she had used a cane for two years both at home and out of the home and that she needed it when moving around to steady herself. (AR 37-38). She also notes that her primary care physician recommended she use a cane to address balance issues. (AR 305, 311, 396, 403, 416, 418, 421-22). And, the consultative examining physician observed that Plaintiff did not walk without her cane. (AR 279-81).

First, Plaintiff is incorrect that the ALJ did not mention her cane in the decision; the ALJ noted in his RFC assessment that Plaintiff used a cane at the consultative examination. (AR 26). Second, to the extent that the ALJ erred by failing to include an express provision in the RFC regarding the use of a cane, the error was harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that an error is harmless and the court will not remand for further specification when convinced that the ALJ will reach the same result (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010))). The ALJ found that Plaintiff could perform her past work as a telephone solicitor and a customer service clerk, neither of which, by Plaintiff's own report, required

walking, standing, lifting, or carrying. (AR 219, 220, 221, 222, 223). Moreover, the DOT provides that those jobs require no balancing, no postural activities, the lowest degree of motor coordination, and are sedentary jobs that involve mostly sitting. DOT 299.357-014, 1991 WL 672624 (telephone solicitor); DOT 249.262-101, 1991 WL 672314 (information clerk). Finally, SSR 96-9p provides that most sedentary work can be done even if an individual requires the use of a hand-held device in one hand. SSR 96-9p, 1996 WL 374185, *7. Thus, any failure by the ALJ to incorporate the cane in the RFC or in the hypothetical to the vocational expert was harmless, and remand is not required on this basis.

The ALJ's RFC assessment is supported by substantial evidence of record.

### C. Past Relevant Work

At step four of his decision, the ALJ found Plaintiff capable of performing her past relevant work as a telephone solicitor and customer service clerk, noting that the work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (AR 27). In the narrative discussion, the ALJ recognized that the vocational expert described Plaintiff's past work with reference to The Dictionary of Occupational Titles (DOT) as the job of "telephone solicitor" and as sedentary in physical demand and semi-skilled with an SVP of 3. The ALJ similarly recognized that the vocational expert identified her past work in the DOT as "customer service clerk" and as sedentary in physical demand and skilled with an SVP of 6. The ALJ then wrote: "The vocational expert testified that, given the residual functional capacity outlined above, the claimant retains the capacity to do these jobs as they are generally performed in the national economy." (ECF 27). Finally, the ALJ found the vocational expert's testimony consistent with the DOT. *Id*. (citing SSR 00-4p).

Plaintiff argues that the ALJ committed reversible error by failing to make specific findings as to the physical and mental demands of the past work because the ALJ did not "go into the details of the job requirements to [assess] [Plaintiff's] ability to perform this job." (ECF 17, pp. 18, 17-19) (citing *Smith v. Barnhart*, 388 F.3d 251, 252-53 (7th Cir. 2004)); *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991); *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991); *Strittmatter v. Schweiker*, 729 F.2d 507 (7th Cir. 1984) (discussing SSR 82-62, 1982 WL 31386 (1982)); *Kenefick v. Astrue*, 535 F. Supp. 2d 898, 908-09 (N.D. Ill. 2008) (citing *Cohen v. Astrue*, 258 F. App'x 20, 28 (7th Cir. 2007); *Nolen*, 939 F.2d at 519).

In *Nolen*, the Seventh Circuit Court of Appeals reiterated "that an ALJ must specify the duties involved in a prior job and assess the claimant's ability to perform the specific tasks." 939 F.2d at 519 (quoting *Strittmatter*, 729 F.2d at 509). But in both *Nolen* and *Strittmatter* as well as in *Prince*, all cited by Plaintiff in this case, the ALJ described the previous jobs *generally* based on their exertional level. *Nolen*, 939 F.2d at 519 ("unskilled at the light exertional level); *Prince*, 933 F.2d at 602-03 ("heavy"; finding that the ALJ failed to make any RFC determination); *Strittmatter*, 729 F.3 dat 509 ("sedentary"). The Seventh Circuit Court of Appeals has since construed *Nolen* narrowly, holding that "an ALJ cannot describe a previous job in a generic way, e.g., 'sedentary,' and on that basis conclude that the claimant is fit to perform all sedentary jobs without inquiring into any differences in what the job requires while sitting." *Cohen v. Astrue*, 258 F. App'x 20, 28 (7th Cir. 2007) (citing *Smith v. Barnhart*, 388 F.3d 251, 252-53 (7th Cir. 2004)). In *Cohen*, the ALJ considered the specific jobs the plaintiff had held, and, thus, the court found *Nolen* to be inapplicable. The court found that there was ample support for the ALJ's conclusion that the plaintiff could have returned to her previous jobs. In contrast, in *Kenefick*, cited by Plaintiff, the vocational

expert specifically indicated his difficulty in ascertaining the exact skills involved in the claimant's past relevant work, but the ALJ nevertheless found the claimant capable of performing the past relevant work by comparing the RFC with the mental and physical demands of "sedentary, semi-skilled" work. 535 F. Supp. 2d at 909. The court found that the ALJ failed to analyze the specific requirements of the claimant's past relevant work. *Id.*

In the instant case, like in *Cohen* and unlike in *Kenefick*, the ALJ's consideration of Plaintiff's past work did not consist simply of a generic label of "sedentary;" rather, the ALJ considered Plaintiff's specific past work as a telephone solicitor and a customer service clerk, which was described by the vocational expert. *See* (AR 25, 64); *see also Metzger v. Astrue*, 263 F. App'x 529, 533 (7th Cir. 2008) (finding sufficient an ALJ's reliance on vocational expert's testimony describing the duties of the claimant's past work). Although the ALJ's decision itself cites the vocational expert's testimony regarding the physical demand and skill level identified in the DOT, the record contains sufficient evidence of the requirements of the job. *See Metzger*, 263 F. App'x at 533 (citing *Nolen*, 939 F.2d at 518). At the hearing, the vocational expert testified that she had reviewed the file and heard the testimony and that she did not have any questions for Plaintiff. (AR 63-64). In her Work History Report, which is in the record, Plaintiff indicated that her past jobs did not require standing, walking, climbing, stooping, kneeling, crouching, crawling, handling, or reaching but required 7.5 hours of sitting and 7.5 hours of writing notes and being on the computer. (AR 219, 220). Having reviewed Plaintiff's file, the vocational expert identified both past jobs by name (telephone solicitor and customer service clerk) and DOT code (299.357-014 and 249.262-010 respectively), identified both as sedentary, and identified the jobs as semi-skilled and skilled respectively. The ALJ then set out for the vocational expert a hypothetical residual functional

capacity consistent with the RFC determination in this decision, including a limit to frequent but not continuous manipulative limitations on the left upper extremity, no manipulative limitations on the right, and "occasional overhead limitations." (AR 64-65). In response, the vocational expert testified both of Plaintiff's past jobs would accommodate those limitations. (AR 65).

Thus, the ALJ did not err by relying on the vocational expert's testimony, which was supported by the record, and the ALJ's decision at step four was not in error in light of the record evidence. *See, e.g.*, *Reyes v. Berryhill*, No. 16-CV-1008, 2017 WL 3454493, at * 8 (S.D. Ill. Aug. 11, 2017) (citing *Nolen*, 939 F.2d at 518; *Cohen*, 258 F. App'x at 28; *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009)). Remand is not warranted on this basis. To the extent Plaintiff makes additional arguments in this section regarding whether the ALJ erred in the RFC determination as to Plaintiff's left arm use and sitting, which, in turn, would impact Plaintiff's ability to perform her past relevant work, those arguments are addressed above.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief sought in the Brief in Support of Plaintiff's Motion for Summary Judgment [DE 17]. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendant Commissioner of the Social Security Administration and against Plaintiff Bridget Cherry.

So ORDERED this 26th day of January, 2018.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT